**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| RICHARD WELLMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>T-MOBILE USA, INC.,<br><br>Defendant. | Case No. 21-01250<br><br>**Class Action Complaint**<br><br>**Demand for Jury Trial** |

1. Plaintiff Richard Wellman ("Plaintiff"), on behalf of himself and all others similarly situated, files this complaint against Defendant T-Mobile USA, Inc., a Delaware corporation ("T-Mobile" or "Defendant") for, among other things:

- failure to properly secure and safeguard valuable, protected personally identifiable information ("PII"), including social security numbers, phone numbers, names, physical addresses, driver's-license information, and unique IMEI numbers (International Mobile Equipment Identity — a 15-digit number unique to each mobile device);

- failure to comply with industry standards to protect information systems that store PII; and

- failure to provide adequate notice to Plaintiff and other members of the Class that their PII had been accessed and compromised.

Plaintiff seeks, among other things, damages, as well as injunctive relief requiring T-Mobile to (a) fully and accurately disclose the nature of the PII that has been compromised; and (b) adopt reasonably sufficient security practices and safeguards to protect Plaintiff's and the Class members' PII.

2. Plaintiff alleges the following facts based upon personal knowledge as to those allegations concerning himself, and upon information and belief, as to all other matters, based on the investigation conducted by his counsel, which included, among other things, a review and analysis of regulatory filings, press releases and other public statements, and other publicly-available information. Plaintiff's investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendant. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after reasonable discovery.

## I. INTRODUCTION

1. This is a class action brought on behalf of current and former T-Mobile customers whose PII was stolen from T-Mobile on or around August 4, 2021, when T-Mobile servers were hacked.

2. On or about August 15, 2021, T-Mobile's data, which purports to include the PII of over 100 million T-Mobile users, was put on a forum for sale for six bitcoin (approximately $270,000). T-Mobile announced that it was continuing to investigate the breach but has confirmed that the breach has occurred, and the PII is in the hands of bad actors (the "Data Breach"). T-Mobile later confirmed that more than 50 million customer records had been stolen.

3. Unfortunately for T-Mobile customers, this Data Breach is T-Mobile's third since 2020. The Data Breach was a direct and proximate result of T-Mobile's failure to implement and follow basic security procedures, and Plaintiff's and class members' PII is now in the hands of criminals. Plaintiff and class members now face a substantially increased risk of identity theft, both currently and for the indefinite future, at least in part because their PII will now be offered and sold to identity thieves in an aggregated format, lending itself for ease of use in widespread phishing email schemes, identity theft and other harms caused by the disclosure of their PII. Consequently, Plaintiff and other class members have had to spend, and will continue to spend, significant time and money to protect themselves due to T-Mobile's failures.

4. To recover damages for himself and other class members and obtain injunctive relief, Plaintiff brings this class action against T-Mobile.

## II. THE PARTIES

### A. Plaintiff Richard Wellman

5. Plaintiff Richard Wellman is a resident and citizen of California. T-Mobile obtained and continues to maintain Plaintiff's PII and has a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff would not have entrusted his PII to T-Mobile had he known that it failed to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach.

6. As a result of the Data Breach, Plaintiff tried to mitigate its impact, including multiple hours spent reviewing credit reports and financial account statements for any

indications of actual or attempted identity theft or fraud. Plaintiff anticipates spending several hours a month reviewing credit monitoring reports and/or checking account statements for irregularities. The time Plaintiff has spent so far on these tasks is valuable time he otherwise would have spent on other activities, including work or recreation.

**B. Defendant T-Mobile USA, Inc.**

7. Defendant T-Mobile USA, Inc. is a Delaware Corporation with its principal place of business located at 3618 Factoria Boulevard SE, Bellevue, Washington. T-Mobile is the second largest provider of wireless services in the United States, with more than 104.8 million subscribers as of the end of the second quarter of 2021. T-Mobile describes itself as the "Un-carrier," "disrupt[ing] the wireless communications services industry, by actively engaging with and listening to our customers and eliminating their existing pain points, including providing them with added value, an exceptional experience and implementing signature Un-carrier initiatives that have changed wireless for good." T-Mobile claims to have "a relentless customer experience focus, consistently leading the wireless industry in customer care."

8. T-Mobile requires all customers to provide a broad range of PII to T-Mobile in order to obtain T-Mobile wireless services. The PII required by T-Mobile includes, *inter alia*, names, addresses, credit card and/or debit card information, birth dates, drivers' license images and/or numbers, and Social Security numbers. Such PII is easy fodder for identity theft. As a result, entities like T-Mobile that collect and maintain the most sensitive of PII have a duty to ensure that they are taking adequate steps to protect that data from unauthorized disclosure and to carefully monitor their computer networks to identify any intrusion efforts and address them before hackers are successful in breaching T-Mobile's systems.

9. T-Mobile is well aware of the high risk posed to its customers by data breaches. Indeed, in a Form 10-K, filed with the Securities Exchange Commission, T-Mobile disclosed this very risk, stating:

> Our business involves the receipt, storage and transmission of our customers' confidential information, including sensitive personal information and payment card information, confidential information about our employees and suppliers, and other sensitive information about our Company, such as our business plans, transactions and intellectual property (collectively, "Confidential Information"). Unauthorized access to Confidential Information may be difficult to anticipate, detect, or prevent, particularly given that the methods of unauthorized access constantly change and evolve. ***We are subject to the threat of unauthorized access or disclosure of Confidential Information by state-sponsored parties***, ***malicious actors***, ***third parties or employees, errors or breaches by third-party suppliers***, ***or other security incidents that could compromise the confidentiality and integrity of Confidential Information***.
>
> ***We have previously notified affected customers of incidents involving unauthorized access to certain customer information*** in compliance with applicable laws concerning customer notice, and we expect we will provide such notices again. For example, in December 2020, we notified a small number of customers of unauthorized access to their account information that is considered "customer proprietary network information" by the FCC. More typically, such incidents involved attempts to commit fraud by taking control of a customer's phone line. In a few cases, incidents involved unauthorized access to credit card information, financial data, social security numbers or passwords. While we do not believe these security incidents were material and actions were taken to prevent reoccurrence, we expect to continue to be the target of cyber-attacks, data breaches, or security incidents, which may in the future have a material adverse effect on our business, reputation, financial condition, and operating results.[1]

10. The December 2020 data breach, however, was not the only time that T-Mobile customers have been victimized by T-Mobile data breaches. As noted below, T-Mobile has acknowledged several breaches of its network and computer systems in recent years. In addition, T-Mobile acknowledged a prior data breach at one of T-Mobile's business partners that impacted T-Mobile customers whose PII T-Mobile entrusted to that third party.[2]

## III. JURISDICTION AND VENUE

---

[1] T-Mobile Form 10-K for the period ending December 31, 2020 at 12. Unless otherwise noted, all emphases are added.

[2] *Id*. at 13.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum value of $5,000,000.00, consists of putative class membership of greater than 100 members, and is a class action in which some of the members of the Class, including the Plaintiff, is a citizen of a state different than that of Defendant.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is authorized to conduct business within this District, is headquartered in this District, has intentionally availed itself of the laws in this District, and conducts substantial business, including acts underlying the allegations of this complaint, in this District.

## IV. SUBSTANTIVE ALLEGATIONS

### A. T-Mobile's Massive Data Breach

13. On August 15, 2021, Vice.com reported that T-Mobile was investigating a potential breach of its servers. The investigation followed an internet forum post in which a user claimed to be offering a massive trove of personal data of T-Mobile customers for sale. Subsequently, the poster told Vice that they had obtained data from T-Mobile servers that related to more than 100 million people or, as the poster said in an online chat with Vice.com, "T-Mobile USA. Full customer info."[3] Vice.com further reported that the seller was asking for 6 bitcoin, then worth roughly $270,000 for "a subset of the data containing 30 million social security numbers and driver licenses. The seller said they are privately selling the rest of the data at the moment."[4] Internet screen captures appeared consistent with the Vice.com reporting:

[The remainder of this page is deliberately left blank.]

---

[3] https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million (last visited Aug. 31, 2021).

[4] https://www.vice.com/en/article/akg8wg/tmobile-investigating-customer-data-breach-100-million (last visited Aug. 31, 2021).


SELLING
124M U.S.A. SSN, DOB, DL database, freshly breached
by SubVirt - 9 hours ago
SubVirt
M.V.P User
Posts 24
Threads 8
Joined Mar 2019
Reputation 30
2 YEARS OF SERVICE
Exclamation 9 hours ago This post was last modified: 4 hours ago by SubVirt. Edited 2 times in total.
This data has never been sold to anyone else and is not public.
It was dumped several days ago.
Edit: Just to clarify, there are 30 million unique SSNs in these files, due to duplicates
Sample:
29-JAN-83,[redacted]KER,VA,24014
19-NOV-45,[redacted]MO,PR,00951
09-OCT-73,[redacted]LL,TX,78023
14-OCT-82,[redacted]Y,11223
04-JUN-84,[redacted]EBISH,PA,18651
13-JUL-79,[redacted]E,NY,11212
13-NOV-90,[redacted]NT,TX,77086
10-DEC-63,[redacted],CA,91770
30-JAN-38,[redacted]NO,NY,10034
[redacted]
SERIOUS BUYERS ONLY, MUST SHOW PROOF OF FUNDS BEFORE ADDITIONAL INFO
Price: 6 Bitcoin
My Telegram:

14. Apparently first alerted to the fact that it had been hacked when it was contacted by reporters from Vice.com, T-Mobile indicated that it was investigating a potential data breach, stating that "[w]e are aware of claims made in an underground forum and have been actively investigating their validity. We do not have any additional information to share at this time."[5]

15. Then, on the evening of August 16, 2021, T-Mobile issued a statement confirming that "[w]e have determined that unauthorized access to some T-Mobile data occurred, however we have not yet determined that there is any personal customer data involved."[6] Notably, this acknowledgement came only after the Company stated that:

> We have been working around the clock to investigate claims being made that T-Mobile data may have been illegally accessed. We take the protection of our customers very seriously and we are conducting an extensive analysis alongside digital forensic experts to understand the validity of these claims, and we are coordinating with law enforcement.[7]

T-Mobile further assured consumers that "[o]nce we have a more complete and verified understanding of what occurred, we will proactively communicate with our customers and other stakeholders."[8] However, T-Mobile's focus on "proactive[] communication" appears to have centered on creating a website on which it buried critical information about the breach below a series of self-serving statements.

16. On August 18, 2021, T-Mobile issued more information regarding the T-Mobile Data Breach, confirming that a massive cache of highly sensitive PII maintained and entrusted to the Company had been accessed by an unknown third party without consumers' consent. In total, data from approximately 48 million consumers, including

---

[5] *Id.*

[6] https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021 (last visited Aug. 31, 2021).

[7] https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021 (last visited Aug. 31, 2021).

[8] https://www.t-mobile.com/news/network/cybersecurity-incident-update-august-2021 (last visited Aug. 31, 2021).

both current and former T-Mobile prepaid customers and former and prospective consumers of T-Mobile's post-paid services.

17. T-Mobile announced that critical PII, "including first and last names, date of birth, SSN, and driver's license/ID information, were compromised" for approximately 40 million former or prospective T-Mobile customers.[9,10]

18. The Company acknowledged that "first and last names, date of birth, SSN, and driver's license/ID information was compromised" for approximately 7.8 million then-current postpaid consumers and of those, approximately 850,000 T-Mobile prepaid customers had their names, phone numbers, and PINs exposed.[11]

## B. T-Mobile's Defective Notice Regarding the Data Breach

19. On or about August 19, 2021, T-Mobile began informing consumers of the data breach directly via text message:

> T-Mobile has determined that unauthorized access to some of your personal data has occurred. We have no evidence that your debit/credit card information was compromised. We take the protection of our customers seriously. We are taking actions to protect your T-Mobile account and we recommend that you take action to protect your credit. Read more here: t-mo.co/Protect.

20. T-Mobile downplayed the severity of the breach and the risk to consumers in several ways. Although this text notice states that "[w]e have no evidence that your debit/credit card information was compromised[,]" it fails to disclose that the T-Mobile Data Breach resulted in the exposure of a broad range of critical information, including ***names***, ***drivers' licenses***, ***government identification numbers***, ***Social Security numbers***, ***dates of birth***, T-Mobile prepaid PINs, addresses and phone numbers. In

---

[9] https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation (last visited Aug. 31, 2021).

[10] Postpaid accounts are traditional cellular accounts where the consumer is periodically billed for services. Applicants for postpaid accounts are often required to provide sufficient information for a credit check prior to being offered service.

[11] https://www.t-mobile.com/news/network/additional-information-regarding-2021-cyberattack-investigation (last visited Aug. 31, 2021).

order to discover this critical information, a T-Mobile consumer is required to go to a website linked at the very end of the text notice. Critically, a T-Mobile consumer will only reach that web site link after having been told that (a) there is "no evidence that your debit/credit card information was compromised," and (b) that "[w]e are taking actions to protect your T-Mobile account."

21. The website established by T-Mobile begins with "Keeping you safe from cybersecurity threats."[12] Then notes that "[c]ustomers trust us with their private information and we safeguard it with the utmost concern."[13]

22. While eventually acknowledging that the breach included "names, drivers' licenses, government identification numbers, Social Security numbers, dates of birth, T-Mobile prepaid PINs (which have already been reset to protect you), addresses and phone number(s)[,]" T-Mobile immediately states, in BOLD type that "[w]e have no indication that personal financial or payment information, credit or debit card information, account numbers, or account passwords were accessed."

23. T-Mobile then assures customers that "[w]e're relentlessly focused on taking care of our customers—that has not changed. We've been working around the clock to address this event and continue protecting you, which includes taking immediate steps to protect all individuals who may be at risk." Only after that, and after once again telling consumers – again in BOLD type – that "we have no information that indicates any passwords, postpaid PIN numbers, or financial or payment information have been compromised[,]" does T-Mobile provide consumers with advice and information on "smart practices to help keep your account more secure."[14]

---

[12] https://www.t-mobile.com/brand/data-breach 2021?cmpid=MGPO_SS_C_SVC MSG_4U4RU6SQ5MF7PTD66964 (last visited Aug. 31, 2021).

[13] *Id.*

[14] https://www.t-mobile.com/brand/data-breach-2021?cmpid=MGPO_SS_C_SVC MSG_4U4RU6SQ5MF7PTD66964 (last visited Aug. 31, 2021).

### C. T-Mobile's Privacy Notices and Agreements

24. T-Mobile promises consumers "[t]he privacy you deserve," comforting consumers, including Plaintiff and Class Members, that the critical PII that they entrust to T-Mobile will be protected from unauthorized disclosure, that T-Mobile "put[s] you in control with clear, simple data choices," that "[w]e're open and honest about our privacy practices," and that "[w]e provide tools to help keep you protected."[15] In fact, T-Mobile fails to maintain sufficient and adequate security over the PII entrusted to it by consumers.

25. T-Mobile provides and maintains a Privacy Notice, in which it recognizes that:

> You trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart. ***A big part of that is maintaining your privacy***. ***We believe you deserve transparency, education***, ***choice***, ***protection***, ***and simplicity***. ***Our goal is to help you take action to protect your privacy***.

(Emphasis added).[16] Pursuant to the Privacy Agreement, T-Mobile acknowledges that it collects sensitive PII, such as:

- Contact and account information, like your name, usernames, passwords, address, telephone number, email address, and household members;
- Authentication and security information like your government identification, Social Security number, security codes, and signature;
- Demographic information, like your age, gender, veteran status, and date of birth;
- Payment information, like your credit card, debit card, and bank account number (*see* the T-Mobile Financial Privacy Notice and Sprint Financial Privacy Notice for more information);
- Preference information, including preferences related to marketing, advertising and communications and participation in T-Mobile programs; and

---

[15] https://www.t-mobile.com/privacy-center (last visited Aug. 31, 2021).

[16] https://www.t-mobile.com/privacy-center/our-practices/privacy-policy (last visited Aug. 31, 2021).

- Other information you choose to provide, like when you submit a survey response, enter a contest or promotion, or contact us.[17]

T-Mobile also identifies how it uses the data that it collects from consumers, including Plaintiff and Class Members, noting first that "[w]e may disclose personal data about you to third parties ***with your consent***, which we may get in writing, online, or orally. We may also share your personal data with third parties ***when you tell us to*** or when you use our products or services to interact with third parties, whose separate privacy notices may apply to that data." (Emphasis added).[18]

26. T-Mobile also maintains a "Financial Privacy Policy," in which it acknowledges that it collects information such as, *inter alia*, social security numbers, payment history and credit history, and credit scores and income information.[19] In the Financial Privacy Policy, T-Mobile assures consumers that "[t]o protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings."[20]

27. Remarkably, T-Mobile's data security was so lax that it failed to discover the intrusion on its own. Instead, T-Mobile first learned that a breach may have occurred from an online forum post by someone claiming that they had compromised T-Mobile's servers.[21]

**D. T-Mobile's Inadequate Data Security Violated the FTC Act and the FCA**

28. Under the Federal Trade Commission Act of 1915 ("FTC Act"), T-Mobile was required to undertake reasonable and appropriate measures to protect the PII entrusted to it by Plaintiff and the Class to protect that PII from unauthorized disclosure. Similarly,

---

[17] *Id.*

[18] *Id.*

[19] https://s.tmocache.com/pdf/T-Mobile-Financial-Privacy-Policy_EN.pdf (last visited Aug. 31, 2021).

[20] *Id.*

[21] https://www.theverge.com/2021/8/18/22630446/t-mobile-47-million-data-breach-ssn-pin-pii (last visited Aug. 31, 2021).

pursuant to the Federal Communications Act ("FCA"), common carriers, such as T-Mobile, are required to protect the consumer PII entrusted to it.

29. The Federal Trade Commission ("FTC") has adopted and published guidelines establishing reasonable and appropriate data security measures for businesses such as T-Mobile. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

30. The FTC has also published guidance titled "Protecting Personal Information: A Guide for Business" in which it addresses steps that businesses should take in protecting sensitive consumer data, including noting that "[i]f you don't have a legitimate business need for sensitive personally identifying information, don't keep it."[22] (emphasis added). A notable instruction given that T-Mobile appears to have kept a large amount of PII belonging to consumers who applied for, but ultimately did not get or maintain, a T-Mobile account. In addition, the FTC guide for businesses provides a number of guidelines for network and data security, user authentication, breach detection, and other critical security issues.[23] T-Mobile's failure to follow FTC guidelines, including, but not limited to, maintaining data on former customers or consumers who applied for, but did not ultimately sign up for, T-Mobile accounts, violated the guidelines established by the FTC. In addition, by its failure to adopt and maintain reasonable and adequate data security processes, T-

[22] https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited Aug. 31, 2021).

[23] https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business (last visited Aug. 31, 2021).

Mobile engaged in unfair acts or practices within the meaning of the FTC Act.

31. Pursuant to Section 222 of the FCA, common carriers, such as T-Mobile, are required to protect the consumer PII entrusted to it. 47 U.S.C. § 222(a) states that "[e]very telecommunications carrier has a duty to protect the confidentiality of proprietary information of, and relating to … customers. …" Such customer information includes, *inter alia*, "information that relates to the quantity, technical configuration, type, destination, location, and amount of use of a telecommunications service subscribed to by any customer of a telecommunications carrier, and that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship; and [] information contained in the bills pertaining to telephone exchange service or telephone toll service received by a customer of a carrier." 47 U.S.C § 222(h)(1). With limited exceptions, this customer information may not be disclosed to third parties absent consumer permission.

32. In the T-Mobile Data Breach, unauthorized third parties accessed information protected by 47 U.S.C § 222, including the unique IMEI numbers attached to certain consumers' cellular devices and other data related to billing.

33. In response to the T-Mobile Data Breach, on August 18, 2021, the FCC reiterated that "[t]elecommunications companies have a duty to protect their customers' information. The FCC is aware of reports of a data breach affecting T-Mobile customers and we are investigating."

34. In its conduct, T-Mobile has been at a minimum negligent in its duty to protect the covered confidential proprietary information.

**E. T-Mobile's Multiple Prior Data Breaches**

35. T-Mobile customers have been repeatedly victimized by data breaches, each of which should have served to alert T-Mobile of both (a) the increasing threat of data breaches to the Company and its customers and (b) the apparent weaknesses in T-Mobile's network and data security systems. Indeed, T-Mobile's failure to even establish adequate

systems to identify when its systems have suffered a breach is all the more egregious given repeated breaches that the Company has experienced in recent years.[24] These breaches included a breach as recent as December 2020, when the call logs of approximately 200,000 T-Mobile customers were accessed. T-Mobile noted that the breach related to "less than .02 percent" of its customers, downplaying its significance and further noting that it "identified this attack in early December and quickly shut down the incident."[25] Similarly, a T-Mobile breach in August 2018 exposed certain data for approximately two million T-Mobile customers, and a breach in March 2020 that impacted T-Mobile employee accounts also exposed the data of some T-Mobile customers.[26, 27]

**F. T-Mobile's "Awful" Security**

36. On August 26, 2021, the Wall Street Journal reported that John Binns, a 21-year-old American living in Turkey, was the hacker behind the T-Mobile Data Breach. According to the report, Binns breached T-Mobile's systems by identifying an unprotected T-Mobile router using publicly available software. Binns then gained access to T-Mobile's East Wenatchee, Washington data center and accessed credentials for more than 100 T-Mobile Servers. The Wall Street Journal reported that Binns undertook the effort to gain attention — "generating noise was one goal." It took just a week to "burrow" into the T-Mobile servers and access the massive trove of consumer PII. Once Binns accessed T-Mobile's servers he "was panicking because I had access to something big." Binns asserted that T-Mobile's "security is awful." That sentiment appears to be shared by some data experts. As the Wall Street Journal reported, the fact that T-Mobile stored data and PII

---

[24] https://www.theverge.com/2021/8/18/22630446/t-mobile-47-million-data-breach-ssn-pin-pii (last visited Aug. 31, 2021).

[25] https://www.theverge.com/2021/1/3/22211839/t-mobile-customers-call-records-hacker-security (last visited Aug. 31, 2021).

[26] https://www.theverge.com/2018/8/24/17776836/tmobile-hack-data-breach-personal-information-two-million-customers. THE VERGE (last visited Aug. 31, 2021).

[27] https://www.t-mobile.com/responsibility/consumer-info/pii-notice (last visited Aug. 31, 2021).

from both prospective clients and former customers "does not sound like good data management practices," according to Glenn Gerstell a former general counsel for the National Security Agency.

**G. The Devastating Consequences of T-Mobile's Data Breach**

37. The T-Mobile Data Breach is not a run of the mill data breach that can be remediated by, for example, replacing credit cards and monitoring billing statements for a month. The data at issue in the T-Mobile Data Breach, names, birth dates, Social Security numbers, addresses, *etc.*, are the holy grail of PII, creating an immediate risk of fraud and identity theft that cannot be quickly or easily remediated.

38. As Brian Krebs, a well-known authority on computer and network security and data breaches notes:

> [t]his stolen data is being actively sold, but if the past is any teacher much of it will wind up posted online soon. It is a safe bet that scammers will use some of this information to target T-Mobile users with phishing messages, account takeovers and harassment.[28]

With this data, thieves can set up financial accounts in an unsuspecting consumer's name, such as credit card accounts or consumer loans — and they will be able to do so for as long as that consumer lives. A consumer cannot simply replace their Social Security number or birth date as they might a compromised credit or debit card. "Data stolen and exposed in this breach may also be used for identity theft. Credit monitoring and ID theft protection services can help you recover from having your identity stolen, but most will do nothing to stop the ID theft from happening."[29]

39. Social Security numbers, in combination with names and birth dates, have remained one of the primary and preeminent means of identity verification for the last fifty years. Hackers know this and have, for years, focused intensely on large scale data breaches that yield a wealth of PII revolving around these three key items. The breached data can

---

[28] https://krebsonsecurity.com/2021/08/t-mobile-breach-exposed-ssn-dob-of-40m-people/ (last visited Aug. 31, 2021).

[29] *Id.*

then be sold, as it is being here, in bulk on the dark web for just a few dollars per Social Security number.

40. In 2020, consumers lost approximately $13 billion as a result of "traditional identify theft," where hackers use PII, often accessed through data breaches like the T-Mobile Data Breach, to open credit card accounts or otherwise profit through the takeover of a consumer's identity. Traditional identity theft has gained steam as banks and other financial institutions have transitioned to business models that require less person-to-person interaction.

41. Those consumers whose phone numbers were also included in the T-Mobile Data Breach face the additional risk of phone number spoofing or hijacking, where hackers transfer a consumer's cellular phone number to a different device and then use that device, along with the PII they have obtained, to impersonate the consumer in communications with banks, credit card companies, brokers, and insurers. The issue of phone spoofing has become more critical in recent years as cellular phones are increasingly used to confirm transactions, changes to passwords, etc. and to engage in a wide array of financial transactions that, just a few years ago, might have required a face-to-face meeting.

42. The rise of use of cellular phones as a means of identification has been driven by the increased use of two-factor authentication, which often involves sending a text message to a cellular telephone to confirm, for example, account openings or transactions. Phone number spoofing or hijacking thus greatly increases the risk of identity theft to consumers.

## V. CLASS ACTION ALLEGATIONS

43. Pursuant to Rule 23(b)(1), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure, Plaintiff asserts claims, as set forth below, on behalf of himself and all others similarly situated as representatives of the following Classes defined as follows:

> Nationwide Class: All residents of the United States whose PII was accessed or otherwise compromised as a result of the T-Mobile Data Breach.

California Subclass: All residents of the state of California whose PII was accessed or otherwise compromised as a result of the T-Mobile Data Breach.

Washington Subclass: All residents of the state of Washington whose PII was accessed or otherwise compromised as a result of the T-Mobile Data Breach.

Members of the Nationwide Class, California Subclass, and Washington Subclass are referred to herein collectively as "Class Members."

44. Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

45. The proposed Class and separate subclasses meet the requirements of Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

46. **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time but T-Mobile is the second largest wireless carrier in the United States, providing services to almost 105 million Americans. In addition, T-Mobile has acknowledged that the PII of approximately 50 million past, present and potential T-Mobile customers was obtained in the T-Mobile Data Breach, indicating that there are many millions of members in the Class and subclasses, making joinder of each individual impracticable. Ultimately, members of the Class will be easily identified through Defendant's records.

47. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and subclasses, and those questions predominate over any questions that may affect individual members of the Class and subclasses. Common questions include:

a. Whether Defendant failed to adequately safeguard Plaintiff's and the Class Members' PII;

b. Whether Defendant failed to protect Plaintiff's and the Class Members'

PII, as promised;

c. Whether Defendant's computer systems and data security practices used to protect Plaintiff's and the Class Members' PII violated federal, state and local laws, or Defendant's duties;

d. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Plaintiff's and the Class Members' PII properly and/or as promised;

e. Whether Defendant violated the consumer protection statutes and/or data breach notification statutes applicable to Plaintiff and each of the Class Members;

f. Whether Defendant failed to notify Plaintiff and members of the Class about the T-Mobile Data Breach as soon as practical and without delay after the breach was discovered;

g. Whether Defendant acted negligently in failing to safeguard Plaintiff's and the Class Members' PII;

h. Whether Defendant entered into contracts with Plaintiff and the members of the Class that included terms requiring Defendant to protect the confidentiality of Plaintiff's and the Class Members' PII and have reasonable security measures;

i. Whether Defendant's conduct described herein constitutes a breach of its contract with Plaintiff and the Class Members;

j. Whether Defendant should retain the money paid by Plaintiff and Class Members to protect their PII;

k. Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and the members of the Class are entitled to restitution as a result of Defendant's wrongful conduct;

m. What equitable relief is appropriate to redress Defendant's wrongful conduct; and

n. What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by members of the Class.

48. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class and subclasses. Plaintiff and the members of the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with them.

49. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and there are no defenses unique to Plaintiff. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the members of the proposed Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

50. **Risk of Prosecuting Separate Actions**: This case is appropriate for certification because prosecution of separate actions would risk either inconsistent adjudications which would establish incompatible standards of conduct for the Defendant or would be dispositive of the interests of members of the proposed Class. Furthermore, T-Mobile's computer systems, networks, and servers still exist, and are still vulnerable to future attacks — one standard of conduct is needed to ensure the future safety of T-Mobile's computer systems, networks, and servers.

51. **Policies Generally Applicable to the Class**: This case is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Plaintiff and proposed Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards members of the Class, and making final injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's practices challenged herein apply to and affect the members of the Class

uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the proposed Class as a whole, not on individual facts or law applicable only to Plaintiff.

52. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and the members of the Class. The injuries suffered by each individual member of the Class are relatively small in comparison to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. Absent a class action, it would be virtually impossible for individual members of the Class to obtain effective relief from Defendant. Even if members of the Class could sustain individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties, including the Court, and would require duplicative consideration of the common legal and factual issues presented here. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court.

## VI. CAUSES OF ACTION

### Count I
### Negligence
### (On Behalf of the Nationwide Class or, in the Alternative, State Specific Subclasses)

53. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

54. T-Mobile required Plaintiff and class members to submit non-public, personal information to obtain plans and/or devices from T-Mobile.

55. In providing their PII, Plaintiff and class members had a reasonable expectation that this information would be securely maintained and not easily accessible to,

or exfiltrated by cybercriminals.

56. Further, Plaintiff and class members had a reasonable expectation that in the event of a Data Breach, T-Mobile would provide timely and adequate notice to them and would properly identify what PII was exposed during a Data Breach so that Plaintiff and class members could take prompt and appropriate steps to safeguard their identities.

57. T-Mobile, as an entity that collects sensitive, private data from consumers, such as Plaintiff and class members, and likewise stores and maintains that data, has both a contractual duty and a duty arising independently from any contract to protect that information.

58. Specifically, T-Mobile, as the purported expert guardian and gatekeeper of data, had a duty to Plaintiff and class members to securely maintain the PII collected as promised, warranted, and in a reasonable manner which would prevent cybercriminals from accessing and exfiltrating this information.

59. By undertaking the duty to maintain and secure this data, sharing it and using it for commercial gain, T-Mobile had a duty of care to use reasonable means to secure and safeguard its systems and networks — and Plaintiff and class members' PII held within it— to prevent disclosure of the information, and to safeguard the information from cyber theft.

60. T-Mobile's duty included a responsibility to implement systems and processes by which it could detect and prevent a breach of its security systems in an expeditious manner and to give prompt and adequate notice to those affected by a data breach.

61. T-Mobile owed a duty of care to Plaintiff and class members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected and safeguarded the PII of the Plaintiff and the Class.

62. T-Mobile's duty of care to use reasonable security measures arose as a result of the special relationship that existed between T-Mobile and Plaintiff and class members. It is recognized by T-Mobile's Privacy Policy as well as applicable laws. Specifically, T-

Mobile actively solicited PII as part of its business and was solely responsible for and in the position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and class members from a resulting Data Breach.

63. Likewise, as the guardian and gatekeeper of Plaintiff and class members' PII, a special duty existed between T-Mobile and Plaintiff and class members, one that required T-Mobile to promptly and adequately provide notice of the Data Breach in a manner that would allow Plaintiff and class members to take prompt and appropriate steps to safeguard their identities.

64. T-Mobile also had a common law duty to prevent foreseeable harm to others. Plaintiff and class members were the foreseeable and probable victims of any inadequate security practices. It was foreseeable that Plaintiff and class members would be harmed by the failure to protect their personal information because hackers are known to routinely attempt to steal such information and use it for nefarious purposes.

65. T-Mobile knew or should have known that the Plaintiff and class members were relying on T-Mobile to adequately safeguard and maintain their PII.

66. Based on T-Mobile's history of Data Breaches, T-Mobile management was on notice that T-Mobile's systems and networks at issue in this Data Breach were vulnerable, not secure, and that a cybercriminal attack may be successful. Nevertheless, T-Mobile ignored the warnings and failed to improve its data safeguards and secure Plaintiff and class members' PII.

67. T-Mobile had additional duties to safeguard Plaintiff and class members' data pursuant to the FTC Act, 15 U.S.C. § 45. Under this statute, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and class members' PII.

68. T-Mobile's duty to use reasonable care in protecting confidential data is also because T-Mobile is bound by industry standards to protect confidential PII.

69. T-Mobile breached its duties, and thus was negligent, by failing to use


Breskin Johnson & Townsend PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104

reasonable measures to protect the Plaintiff and class members' data. The specific negligent acts and omissions committed by T-Mobile include, but are not limited to, the following:

(a) Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and class members' PII;

(b) Failing to adequately monitor the security of its networks and systems;

(c) Failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

(d) Allowing unauthorized access to and exfiltration of Plaintiff and class members' PII;

(e) Failing to timely detect that Plaintiff and class members' PII had been compromised;

(f) Failing to provide timely notice that Plaintiff and class members' PII had been compromised so those at risk could take timely and appropriate steps to mitigate the potential for identity theft and other damages; and

(g) Failing to provide adequate notice of what PII had been compromised so that Plaintiff and class members at risk could take timely and appropriate steps to mitigate the potential for identify theft and other damages.

70. It was foreseeable to T-Mobile that its failure to use reasonable measures to protect Plaintiff and the class members' PII, including when it warned its systems and networks were vulnerable to cyberattack, would result in injury to Plaintiff and class members. Further, the breach of security was reasonably foreseeable given the known high frequency of Data Breaches.

71. It was additionally foreseeable to T-Mobile that failure to timely and adequately provide notice of the Data Breach would result in Plaintiff and class members not being afforded the ability to timely safeguard their identities.

72. It was therefore foreseeable to T-Mobile that its failure to adequately safeguard Plaintiff and class members' PII or provide timely and adequate notice of the

Data Breach, would result in one or more types of injuries to Plaintiff and the class members.

73. Plaintiff is entitled to compensatory and consequential damages suffered as a result of the Data Breach.

74. Plaintiff is also entitled to injunctive relief requiring T-Mobile to, *e.g.*, (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all class members, and any other relief this Court deems just and proper.

**Count II**
**Negligence *Per Se***
**(On Behalf of the Nationwide Class or,**
**in the Alternative, State Specific Subclasses)**

75. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

76. T-Mobile had a legal duty to safeguard Plaintiff and class members' data.

77. Pursuant to the FTC Act, 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and class members' PII. Similar state-specific statutory causes of action—such as consumer fraud and unfair trade practices acts—provide for such a duty, as well.

78. Plaintiff and class members are members of the classes of persons the foregoing statutes are intended to protect.

79. The essential purposes of these statutes are to protect from the same or similar kind of harm caused to Plaintiff and class members, as a direct and proximate result of T-Mobile's breach of those statutory and regulatory duties.

80. T-Mobile breached its duties to Plaintiff and class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and class members' PII.

81. T-Mobile's breach of its duties arising out of the foregoing statutes constitutes negligence *per se*.

82. But for T-Mobile's wrongful and negligent breach of its duties owed to Plaintiff and class members, Plaintiff and class members' data would not have been compromised and they would not have been harmed.

83. The injury and harm suffered by Plaintiff and class members was the reasonably foreseeable result of T-Mobile's breach of its duties. T-Mobile knew or should have known that it was failing to meet its duties, and that T-Mobile's breach would cause Plaintiff and class members to experience the foreseeable harms associated with the exposure of their PII, including increased risk of identity theft.

84. As a direct and proximate result of T-Mobile's violations of the foregoing statutes, Plaintiff and class members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

**Count III**
**Gross Negligence**
**(On Behalf of the Nationwide Class or,**
**in the Alternative, State Specific Subclasses)**

85. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

86. Plaintiff was required to submit non-public PII to purchase a plan and/or device from T-Mobile. T-Mobile had a duty to Plaintiff to securely maintain the PII collected as promised and warranted.

87. T-Mobile maintained unencrypted PII, however, on certain servers.

88. T-Mobile knew this information was (a) unencrypted and thus subject to breach and misuse; (b) included highly sensitive PII; and (c) was not in transit and being actively used.

89. The failure to encrypt this obsolete data containing highly sensitive PII on legacy and/or back-up versions of T-Mobile servers was particularly flagrant and egregious.

Indeed, this unencrypted PII made public exposure of this PII in a cyberattack very likely.

90. Moreover, there was no reasonable reason for retaining these records which contain highly sensitive PII, including date of birth, social security number, and driver's license/ID information. As a result of T-Mobile's conduct, Plaintiff's highly sensitive, unencrypted PII was accessed, exfiltrated and otherwise exposed by the Data Breach

91. By voluntarily accepting the duty to maintain and secure this data, and sharing it and using it for commercial gain, T-Mobile had a duty of care to use reasonable means to secure and safeguard its computer systems to prevent disclosure of the information, and to safeguard the information from cyber theft.

92. T-Mobile's duty included a responsibility to implement systems and processes by which it could detect and prevent a breach of its security systems in an expeditious manner and to give prompt notice to those affected by a Data Breach.

93. T-Mobile owed a duty of care to Plaintiff to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected and safeguarded Plaintiff's PII.

94. T-Mobile owed an additional duty to Plaintiff to take measures to ensure that, *inter alia*:

(a) all PII was encrypted and continued to be encrypted;

(b) PII is deleted after a reasonable amount of time; and/or

(c) Plaintiff was notified that their sensitive and unencrypted PII had continued to be stored.

95. T-Mobile's duty of care to use reasonable security measures arose as a result of the special relationship that existed between T-Mobile and Plaintiff, which is recognized by T-Mobile's Privacy Policy as well as applicable laws. T-Mobile actively solicited PII as part of its business and was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff from the Data Breach.

96. Pursuant to the FTC Act, 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and the class members' PII. Plaintiff and the class members are the individuals whom the FTC Act is intended to protect.

97. T-Mobile's duty to use reasonable care in protecting confidential data arose not only as a result of the statute described above but also because T-Mobile is bound by industry standards to protect confidential PII.

98. T-Mobile consciously failed to use reasonable measures to protect Plaintiff and class members' data. The specific gross negligent acts and omissions committed by T-Mobile include, but are not limited to, the following:

(a) Consciously failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and class members' PII;

(b) Consciously failing to ensure all sensitive Personal Information was encrypted;

(c) Consciously failing to ensure all obsolete data was destroyed in a reasonable amount of time;

(d) Consciously failing to notify Plaintiff and class members that their unencrypted data was still maintained by T-Mobile;

(e) Consciously failing to adequately monitor the security of its networks and systems;

(f) Consciously failing to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

(g) Consciously allowing unauthorized access to class members' PII;

(h) Consciously failing to detect in a timely manner that class members' PII had been compromised; and

(i) Consciously failing to timely notify Plaintiff and class members about the Data Breach so those put at risk could take timely and appropriate steps to mitigate

the potential for identity theft and other damages.

99. It was foreseeable that T-Mobile's conscious failure to use reasonable measures to protect Plaintiff and class members' PII would result in injury to the Plaintiff and class members. Further, the breach of security was reasonably foreseeable given the known high frequency of Data Breaches.

100. It was therefore foreseeable that the conscious failure to adequately safeguard Plaintiff and class members' PII would result in one or more types of injuries to Plaintiff and class members.

101. Plaintiff and class members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

102. Plaintiff and class members are also entitled to injunctive relief requiring T-Mobile to, *e.g.*, (i) identify all backup data it still maintains; (ii) destroy or encrypt backup data that has been obsolete for an unreasonable amount of time; (iii) notify all consumers as to which backup data is still being maintained by T-Mobile; (iv) strengthen its data security programs and monitoring procedures; (v) submit to future annual audits of those systems and monitoring procedures; and (vi) immediately provide robust and adequate credit monitoring to Plaintiff and class members, and any other relief this Court deems just and proper.

**Count IV**
**Invasion of Privacy**
**(On Behalf of the Nationwide Class or,**
**in the Alternative, State Specific Subclasses)**

103. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

104. Plaintiff and class members have a legally protected privacy interest in their PII, which is and was collected, stored and maintained by T-Mobile, and they are entitled to the reasonable and adequate protection of their PII against foreseeable unauthorized access, as occurred with the Data Breach.

105. Plaintiff and class members reasonably expected that T-Mobile would protect and secure their PII from unauthorized parties and that their PII would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

106. T-Mobile unlawfully invaded the privacy rights of Plaintiff and the class members by engaging in the conduct described above, including by failing to protect their PII by permitting unauthorized third parties to access, exfiltrate, and view this PII.

107. This invasion of privacy resulted from T-Mobile's failure to properly secure and maintain Plaintiff and the Class and Subclasses members' PII, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

108. Plaintiff, the Class and Subclasses members' PII is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff and class members' PII, and such Information is otherwise protected from exposure to the public by law.

109. The disclosure of Plaintiff, the Class and Subclasses members' PII to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

110. T-Mobile's willful and reckless conduct which permitted unauthorized access, exfiltration, and disclosure of Plaintiff's and the Class and Subclasses members' sensitive, PII is such that it would cause serious mental injury to people of ordinary sensibilities.

111. The unauthorized access, exfiltration, and disclosure of Plaintiff and the Class and Subclasses members' PII was without their consent and in violation of the law.

112. As a result of the invasion of privacy caused by T-Mobile, Plaintiff and class members suffered and will continue to suffer damages and injury as set forth herein.

113. Plaintiff and the class members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

**Count V**
**Breach of Implied Contract**
**(On Behalf of the Nationwide Class or,**
**in the Alternative, State Specific Subclasses)**

114. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

115. T-Mobile provided plans and/or devices to Plaintiff and class members. In exchange, T-Mobile received benefits in the form of monetary payments and/or other valuable consideration (*e.g.*, access to their private and personal data).

116. T-Mobile has acknowledged these benefits and accepted or retained them.

117. In signing up for T-Mobile's plans and/or purchasing devices through T-Mobile, Plaintiff and class members provided T-Mobile with their private and personal information.

118. By providing that information, and upon T-Mobile's acceptance of that information, Plaintiff and class members, on the one hand, and T-Mobile, on the other, entered into implied contracts whereby T-Mobile agreed to and was obligated to take reasonable steps to secure and safeguard that PII. Such safeguarding was integral and essential to T-Mobile's business of providing data services and devices.

119. Under those implied contracts, T-Mobile was obligated to provide Plaintiff and class members with plans and/or devices and safeguard their PII. Instead, T-Mobile was incapable of providing safety and security and made such PII vulnerable to unauthorized access.

120. Without such implied contracts, Plaintiff and class members would not have signed up for a plan and/or purchased a device through T-Mobile and would not have conferred benefits on T-Mobile, but rather chosen alternative data and device services that did not present these privacy and safety risks.

121. Plaintiff and class members fully performed their obligations under these implied contracts.

122. As described throughout, T-Mobile did not take reasonable steps to safeguard Plaintiff's and Class members' private information. In fact, Defendant willfully violated those privacy interests by maintaining lax data security on its servers.

123. Because T-Mobile failed to take reasonable steps to safeguard Plaintiff's PII, T-Mobile breached its implied contracts with Plaintiff and class members.

124. T-Mobile's failure to fulfill its obligation to safeguard Plaintiff's and Class members' private information resulted in the security breach.

125. Stated otherwise, because Plaintiff and class members provided valuable consideration for privacy protections, they did not receive — even though such protections were a material part, if not the very essence, of their contracts with Defendant — the full benefit of their bargain.

126. As a result of T-Mobile's conduct, Plaintiff and members of the Class have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

127. Accordingly, Plaintiff, on behalf of himself and class members, seeks an order declaring that T-Mobile's conduct constitutes breach of implied contract, and awarding them damages in an amount to be determined at trial.

**Count VI**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of the Nationwide Class or, in the Alternative, State Specific Subclasses)**

128. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

129. There is a covenant of good faith and fair dealing implied in every implied contract. This implied covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. To fulfill its

covenant, a party must give at least as much consideration to the interests of the other party as it gives to its own interests.

130. Under the implied covenant of good faith and fair dealing, T-Mobile is obligated to, at a minimum, (a) implement proper procedures to safeguard the personal information of Plaintiff and other class members; (b) refrain from disclosing, without authorization or consent, the personal information of Plaintiff and other class members to any third parties; (c) promptly and accurately notify Plaintiff and other class members of any unauthorized disclosure of, access to, and use of their personal information; and (d) maintain adequate security and proper encryption in T-Mobile's servers.

131. T-Mobile breached the implied covenant of good faith and fair dealing by, among other things:

(a) Failing to maintain adequate security and proper encryption on T-Mobile's servers;

(b) Allowing third parties to access the PII of Plaintiff and class members;

(c) Failing to implement and maintain adequate security measures to safeguard Plaintiff and class members' personal information; and

(d) failing to timely notify Plaintiff and other Class members of the unlawful disclosure of their PII.

132. As a direct and proximate result of T-Mobile's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have suffered actual losses and damages.

**Count VII**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class or,**
**in the Alternative, State Specific Subclasses)**

133. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

134. Plaintiff and the Class and Subclass members have an interest, both equitable

and legal, in the PII about them that was collected, secured, and maintained by T-Mobile and that was ultimately compromised in the Data Breach.

135. A financial benefit was conferred upon T-Mobile when Plaintiff and the Class and Subclass members provided their PII to T-Mobile in conjunction with signing up for a plan with, or purchasing a device through, T-Mobile. T-Mobile's business model would not exist save for the need to ensure the security of Plaintiff's and class members' PII.

136. The relationship between T-Mobile and Plaintiff and the Class and Subclass members is not attenuated, as Plaintiff and the Class and Subclass members had a reasonable expectation that the security of their information would be maintained when they provided their information to T-Mobile. Plaintiff and the Class and Subclass members were induced to provide their information in reliance on the fact that T-Mobile's stated data security measures were adequate.

137. On information and belief, this financial benefit was, in part, conferred when portions of Plaintiff and Class and Subclass members' payments were used by T-Mobile for maintenance of its servers.

138. T-Mobile realized the benefit of such payments in connection with the maintenance of its servers. T-Mobile also understood and appreciated that the PII pertaining to Plaintiff and the Class and Subclasses members was private and confidential and its value depended upon T-Mobile maintaining the privacy and confidentiality of that PII.

139. But for T-Mobile's willingness and commitment to properly and safely collect, maintain and secure the PII, it would not have been transferred to and entrusted with T-Mobile. Further, if T-Mobile had disclosed that its data security measures were inadequate, T-Mobile would not have gained the trust of its customers.

140. As a result of T-Mobile's wrongful conduct as alleged in this Complaint (including among other things its utter failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and the Class and

Subclass members without having adequate data security measures, and its other conduct facilitating the theft of that PII), T-Mobile has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class and Subclasses members. Among other things, T-Mobile continues to benefit and profit from using that PII while its value to Plaintiff and class and Subclasses members has been diminished.

141. T-Mobile's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the collection, maintenance, and inadequate security of Plaintiff and the Class and Subclasses members' sensitive PII, while at the same time failing to maintain that information secure from unauthorized access and exfiltration by cyber criminals.

142. It would be unjust, inequitable, and unconscionable for T-Mobile to be permitted to retain the benefits it received, and is still receiving, from Plaintiff, the Class and Subclasses members in connection with the collection, maintenance and security of their PII. T-Mobile's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

143. The benefit conferred upon, received, and enjoyed by T-Mobile was not conferred officiously or gratuitously, and it would be inequitable and unjust for T-Mobile to retain the benefit.

144. T-Mobile is therefore liable to Plaintiff, the Class, and Subclasses members for restitution in the amount of the benefit conferred on T-Mobile as a result of its wrongful conduct, including specifically the value to T-Mobile of the PII that was stolen in the Data Breach and the profits T-Mobile is receiving from the use of that information.

**Count VIII**
**Declaratory and Injunctive Relief**
**(On Behalf of the Nationwide Class or, in the Alternative, State Specific Subclasses)**

145. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein.

146. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

147. An actual controversy has arisen in the wake of the Data Breach regarding its present and prospective common law and other duties to reasonably safeguard Plaintiff and class members' PII and whether T-Mobile is currently maintaining data security measures adequate to protect Plaintiff and class members from further, future Data Breaches that compromise their PII.

148. Plaintiff and class members allege that T-Mobile's data security measures remain inadequate and T-Mobile has not provided any evidence that it has remedied the failure that occurred in the Data Breach at issue or has remedied any other vulnerability from its failure to properly assess threats by cybercriminals.

149. Plaintiff and class members continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

150. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, *inter alia*, the following:

(a) T-Mobile continues to owe a legal duty to secure consumers' PII and to timely notify consumers of a Data Breach under the common law and the FTC Act;

(b) T-Mobile owes a duty by virtue of its special relationship, understanding that it is safeguarding sensitive, PII, or that it has already acknowledged a responsibility to keep such information safe by virtue of security policies; and

(c) T-Mobile continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII.

151. The Court also should issue corresponding prospective injunctive relief

requiring T-Mobile to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

152. If an injunction is not issued, Plaintiff and class members will suffer irreparable injury and lack an adequate legal remedy in the event of another Data Breach at T-Mobile. The risk of another such breach is real, immediate, and substantial. If another breach at T-Mobile occurs, Plaintiff and class members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

153. The hardship to Plaintiff and class members if an injunction does not issue exceeds the hardship to T-Mobile if an injunction is issued. Among other things, if another massive Data Breach occurs at T-Mobile, Plaintiff and class members will likely be subjected to substantial identify theft and other damage (as they cannot elect to store their information with another company). On the other hand, the cost to T-Mobile of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and T-Mobile has a pre-existing legal obligation to employ such measures.

154. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by helping to prevent another Data Breach at T-Mobile, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose PII would be further compromised.

**Count IX**
**Violation of California Unfair Competition Law**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq*.**
**(On Behalf of the California Subclass)**

155. The California Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges all preceding paragraphs, as if fully alleged herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose PII was compromised as a result of the Data Breach and reside in states having similar laws regarding unfair

competition.

156. T-Mobile is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

157. T-Mobile violated Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

158. T-Mobile's "unfair" and "deceptive" acts and practices include:

(a) T-Mobile failed to implement and maintain reasonable security measures to protect Plaintiff and California Subclass members' PII from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach. T-Mobile failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security following previous cybersecurity incidents. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the California Subclass, whose PII has been compromised.

(b) T-Mobile's failure to implement and maintain reasonable security measures also was contrary to legislatively-declared public policy that seeks to protect consumers' data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTC Act, 15 U.S.C. § 45, 15 U.S.C. § 6801, *et seq.*

(c) T-Mobile's failure to implement and maintain reasonable security measures also lead to substantial consumer injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because consumers could not know of T-Mobile's inadequate security, consumers could not have reasonably avoided the harms that T-Mobile caused.

(d) Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

159. T-Mobile has engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45.

160. T-Mobile's unlawful practices include:

(a) Failing to implement and maintain reasonable security and privacy measures

to protect Plaintiff and California Subclass members' PII, which was a direct and proximate cause of the Data Breach;

(b) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

(c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause of the Data Breach;

(d) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and California Subclass members' PII, including by implementing and maintaining reasonable security measures;

(e) Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and 15 U.S.C. § 6801, *et seq*.;

(f) Misrepresenting that certain sensitive Personal Information was not accessed during the Data Breach, when it was;

(g) Failing to timely and adequately notify Plaintiff and California Subclass members of the Data Breach;

(h) Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and California Subclass members' PII; and

(i) Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, and 15 U.S.C. § 6801, *et seq*.

161. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

162. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the California Subclass members, into believing that their PII was not exposed and misled Plaintiff and the California Subclass members into believing they did not need to take actions to secure their identities.

163. As a direct and proximate result of T-Mobile's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass members were injured and lost money or property, including monetary damages from fraud and identity theft, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their PII, including but not limited to the diminishment of their present and future property interest in their PII and the deprivation of the exclusive use of their PII.

164. T-Mobile acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff and California Subclass members' rights.

165. Plaintiff and California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from T-Mobile's unfair, unlawful, and fraudulent business practices or use of their PII; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**Count X**
**Violation of the California Consumers Legal Remedies Act**
**CAL. CIV. CODE §§ 1750, *et seq.***
**(On Behalf of the California Subclass)**

166. The California Plaintiff identified above ("Plaintiff," for purposes of this

Count), individually and on behalf of the California Subclass, repeats and realleges all preceding paragraphs, as if fully alleged herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose PII was compromised as a result of the Data Breach and reside in states having similar laws regarding consumer legal remedies.

167. The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA") is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

168. T-Mobile is a "person" as defined by Civil Code §§ 1761(c) and 1770, and has provided "services" as defined by Civil Code §§ 1761(b) and 1770. Specifically, T-Mobile provides data plans and devices to customers.

169. As part of the services T-Mobile offers, T-Mobile touts its ongoing efforts to keep consumers' PII secure, including by ensuring ongoing compliance with legal privacy standards established both domestically and abroad, as recognized by T-Mobile's privacy policy.

170. Plaintiff and the California Class are "consumers" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

171. T-Mobile's acts and practices were intended to and did result in the sales of products and services to Plaintiff and the California Subclass members in violation of Civil Code § 1770, including:

(a) Representing that goods or services have characteristics that they do not have;

(b) Representing that goods or services are of a particular standard, quality, or grade when they were not;

(c) Advertising goods or services with intent not to sell them as advertised; and

(d) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

172. T-Mobile violated Civil Code § 1770, in the following ways:

(a) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and California Subclass members' PII, which was a direct and proximate cause of the Data Breach;

(b) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

(c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

(d) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and California Subclass members' PII, including by implementing and maintaining reasonable security measures;

(e) Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

(f) Failing to timely and adequately notify Plaintiff and California Subclass members of the Data Breach;

(g) Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and California Subclass members' PII; and

(h) Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of

Plaintiff and California Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, 15 U.S.C. § 6801, *et seq*.

173. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

174. Had T-Mobile disclosed to Plaintiff and class members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, T-Mobile was trusted with sensitive and valuable PII regarding millions of consumers, including Plaintiff and the Class and the California Subclass. T-Mobile accepted the responsibility of being a steward of this data while keeping the inadequate state of its security controls secret from the public. Accordingly, because T-Mobile held itself out as maintaining a secure platform for PII data, Plaintiff and the Class and the California Subclass members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

175. As a direct and proximate result of T-Mobile's violations of California Civil Code § 1770, Plaintiff and California Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII, including but not limited to the diminishment of their present and future property interest in their PII and the deprivation of the exclusive use of their PII.

176. Plaintiff and the California Subclass have provided notice of their claims to T-Mobile, in compliance with California Civil Code § 1782(a), on the date of this filing. Plaintiff and the California Subclass seek all relief allowed by law.

**Count XI**
**Violation of the California Consumer Privacy Act**
**CAL. CIV. CODE §§ 1798.100, *et seq*.**
**(On Behalf of the California Subclass)**

177. The California Plaintiff identified above ("Plaintiff," for purposes of this Count), individually and on behalf of the California Subclass, repeats and realleges all preceding paragraphs, as if fully alleged herein. This claim is brought individually under the laws of California and on behalf of all other natural persons whose PII was compromised as a result of the Data Breach and reside in states having similar laws regarding consumer privacy.

178. Plaintiff and California Subclass members are residents of California.

179. T-Mobile is a corporation that is organized or operated for the profit or financial benefit of its shareholders or other owners.

180. T-Mobile is a business that collects consumers' personal information as defined by Cal. Civ. Code § 1798.140(e). Specifically, T-Mobile obtains, receives, or accesses consumers' personal information when customers use T-Mobile's services.

181. T-Mobile uses consumers' personal data to provide services at customers' requests, as well as to develop, improve, and test T-Mobile's services.

182. T-Mobile violated Section 1798.150 of the California Consumer Privacy Act by failing to prevent Plaintiff and the California Subclass members' nonencrypted and nonredacted personal information from unauthorized access and exfiltration, theft, or disclosure as a result of T-Mobile's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

183. T-Mobile knew or should have known that its data security practices were inadequate to secure California Subclass members' PII and that its inadequate data security practices gave rise to the risk of a data breach.

184. T-Mobile failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII it collected and stored.

185. The cybercriminals accessed "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d), in the Data Breach.

186. Upon information and belief, Plaintiff and California Subclass members' PII accessed by the cybercriminals in the Data Breach includes "nonencrypted and unredacted personal information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d).

187. Plaintiff seeks injunctive relief in the form of an order requiring T-Mobile to employ adequate security practices consistent with law and industry standards to protect the California Subclass members' PII, requiring T-Mobile to complete its investigation, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the California Subclass members' authorization, along with an explanation of how the data breach occurred.

188. As a direct and proximate result of T-Mobile's violations of Cal. Civ. Code § 1798.150, Plaintiff and California Subclass members suffered damages, as described above.

189. On the date of this filing, counsel for the California Plaintiff served written notice identifying T-Mobile's violations of Cal. Civil Code § 1798.150(a) and demanding the data breach be cured, pursuant to Cal. Civil Code § 1798.150(b). If T-Mobile does not cure the noticed violation and provide Plaintiff with an express written statement that the violations have been cured and that no further violations shall occur, Plaintiff and the California Subclass will seek statutory damages pursuant to Cal. Civil Code § 1798.150(a)(1)(A).

**Count XII**
**Violation of the Washington Data Breach Notice Act**
**WASH. REV. CODE §§ 19.255.010, *et seq.***
**(On Behalf of the Washington Subclass)**

190. Plaintiff repeats and realleges all preceding paragraphs, as if fully alleged herein. This claim is brought individually under the laws of Washington and on behalf of all other natural persons whose PII was compromised as a result of the Data Breach and reside in states having similar laws regarding data breach notice.

191. T-Mobile is a business that owns or licenses computerized data that includes "personal information" as defined by Wash. Rev. Code § 19.255.010(1).

192. Plaintiff and Washington Subclass members' PII includes "personal information" as covered under Wash. Rev. Code § 19.255.010(5).

193. T-Mobile is required to accurately notify Plaintiff and Washington Subclass members following discovery or notification of the breach of its data security program if PII was, or is reasonably believed to have been, acquired by an unauthorized person and the PII was not secured, in the most expedient time possible and without unreasonable delay under Wash. Rev. Code § 19.255.010(1).

194. Because T-Mobile discovered a breach of its security system in which PII was, or is reasonably believed to have been, acquired by an unauthorized person and the PII was not secured, T-Mobile had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code § 19.255.010(1).

195. By failing to disclose the Data Breach in a timely and accurate manner, T-Mobile violated Wash. Rev. Code § 19.255.010(1).

196. As a direct and proximate result of T-Mobile's violations of Wash. Rev. Code § 19.255.010(1), Plaintiff and Washington Subclass members suffered damages, as described above.

197. Plaintiff and Washington Subclass members seek relief under Wash. Rev. Code § 19.255.040, including actual damages and injunctive relief.

**Count XIII**
**Violation of the Washington Consumer Protection Act**
**WASH. REV. CODE ANN. §§ 19.86.020, *et seq*.**
**(On Behalf of the Washington Subclass)**

198. Plaintiff repeats and realleges all preceding paragraphs as if fully alleged herein. This claim is brought individually under the laws of Washington and on behalf of all other natural persons whose PII was compromised as a result of the Data Breach and reside in states having similar laws regarding consumer protection.

199. T-Mobile is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

200. T-Mobile advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code Ann. § 19.86.010(2).

201. T-Mobile engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, including:

(a) Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Washington Subclass members' PII, which was a direct and proximate cause of the Data Breach;

(b) Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

(c) Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Washington Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

(d) Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Washington Subclass members' PII, including by implementing and maintaining reasonable security measures;

(e) Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Washington Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45;

(f) Failing to timely and adequately notify Plaintiff and Washington Subclass members of the Data Breach;

(g) Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Washington Subclass members' PII;

and

(h) Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Washington Subclass members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45.

202. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' PII.

203. T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and the Washington Subclass members, that their PII was not exposed and misled Plaintiff and the Washington Subclass members into believing they did not need to take actions to secure their identities.

204. T-Mobile acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiff and Washington Subclass members' rights.

205. T-Mobile's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, and violates a statute that contains a specific legislation declaration of public interest impact, including, but not limited to Wash. Rev. Code §§ 19.255.010, *et seq*. Alternatively, T-Mobile's conduct is injurious to the public interest because it has injured Plaintiff and Washington Subclass members, had the capacity to injure persons, and has the capacity to injure other persons, and has the capacity to injure persons. Further, its conduct affected the public interest, including the millions of Washingtonians affected by the Data Breach.

206. As a direct and proximate result of T-Mobile's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and Washington Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and

expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

207. Plaintiff and Washington Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. For an order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class and Subclasses;

B. For equitable relief enjoining T-Mobile from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the class and Subclass members' PII, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and the class members or to mitigate further harm;

C. For equitable relief compelling T-Mobile to use appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII compromised during the Data Breach;

D. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of T-Mobile's wrongful conduct;

E. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

F. For an award of punitive damages, as allowable by law;

G. For an award of attorneys' fees and costs, and any other expense, including reasonable expert witness fees;

H. Pre- and post-judgment interest on any amounts awarded; and

I. Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

Dated: September 13, 2021

Respectfully submitted,

BRESKIN JOHNSON & TOWNSEND PLLC
Roger M. Townsend (WSBA #25525)

s/ Roger M. Townsend
Roger M. Townsend
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660
Facsimile: (206) 652-8290
Email: rtownsend@bjtlegal.com

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr.
(*pro hac vice* to be submitted)
Albert Y. Chang
(*pro hac vice* to be submitted)
Yury A. Kolesnikov
(*pro hac vice* to be submitted)
Nicholaus H. Woltering
(*pro hac vice* to be submitted)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile: (858) 914-2002
Email: fbottini@bottinilaw.com
achang@bottinilaw.com
ykolesnikov@bottinilaw.com
nwoltering@bottinilaw.com

*Attorneys for Plaintiff and the Class*